UNITED STATES of America, Appellee,

v.

Hafiz FARID, Appellant.

No. 83–2261.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 16, 1984.

Decided May 10, 1984.

James M. Rosenbaum, U.S. Atty., Thomas B. Heffelfinger, Asst. U.S. Atty., D. Minn., Minneapolis, Minn., Shari L. LePage, Legal Intern, for appellee.

Thomas B. Heffelfinger, Asst. U.S. Atty., Thomas J. Flynn, Larkin, Hoffman, Daly & Lindgren, Ltd., Minneapolis, Minn., for appellant.

Before BRIGHT, ARNOLD and FAGG, Circuit Judges.

ARNOLD, Circuit Judge.

Hafiz Farid appeals from his conviction for aiding and abetting in the distribution of a Schedule II narcotic in violation of 21 U.S.C. § 841(a)(1). For reversal Farid contends that (1) the evidence was insufficient to support his conviction; (2) statements of a co-defendant were improperly admitted as adoptive admissions; (3) the District Court improperly limited cross-examination of a witness; (4) the Government failed to disclose certain requested information; and (5) the trial judge committed plain error in failing to recuse himself after rejecting Farid's guilty plea. We affirm.

I.

On April 12, 1983, Hafiz Farid and a friend, Ellison Jones, met a police informant named Tony Noble on the street in Minneapolis. Jones asked Noble if he knew anyone who wanted to buy drugs, and Noble arranged for a meeting with two undercover police officers.

Farid, Jones, and Noble met with the officers at noon on April 13 at a hotel in downtown St. Paul. Jones initiated the conversation about the sale of drugs and did most of the talking, but referred to Farid as his partner and used the plural "we." Although Farid did not participate actively in the negotiations, he indicated his agreement with the transaction orally and by nodding. At one point, Farid and Jones left the table where the parties had been negotiating because Jones stated that he wanted to confer with his partner about the price. After they returned, Jones agreed to sell the officers 197 tablets of Dilaudid [1] for forty dollars each. During a later discussion about future drug sales, Farid told one of the officers, "Don't worry, this [plan] will work."

The five men met later that day at a bar to complete the sale. Farid stayed in the bar while Jones went out to his car with one of the officers to count the pills. When Jones told the officer to get the money, he was arrested. Farid was arrested shortly thereafter and charged with aiding and abetting in the distribution of a controlled substance.

After a bench trial on July 20 and 21, 1983, the District Court [2] found Farid guilty as charged, and sentenced him to three years' imprisonment to be followed by a three-year special parole term. This appeal followed.

II.

■■ Farid contends that the evidence was insufficient to show that he aided and abetted in the drug sale. The essential elements of aiding and abetting are: (1) the defendant associated himself with the unlawful venture; (2) he participated in it as something he wished to bring about; and (3) he sought by his actions to make it succeed. *United States v. Brim,* 630 F.2d 1307, 1311 (8th Cir.1980), *cert. denied,* 452 U.S. 966, 101 S.Ct. 3121, 69 L.Ed.2d 980 (1981). After carefully reviewing the record, we conclude that the trier of fact could reasonably have found that Farid's participation satisfied these elements.

---

1. Dilaudid is a trade name for hydromorphone, an opiate drug similar to morphine and heroin.

2. The Hon. Robert G. Renner, United States District Judge for the District of Minnesota.

Appellant also contends that the District Court improperly admitted statements of his alleged partner, Ellison Jones, made during the meeting with the undercover officers to arrange the drug sale. The Government showed that the statements were made in Farid's presence, that Farid understood Jones was attempting to sell a controlled substance, and that he expressed his agreement with Jones's remarks. The trial court properly admitted the statements as adoptive admissions under Fed.R.Evid. 801(d)(2)(B). See, *e.g.*, *United States v. Handy,* 668 F.2d 407, 408 (8th Cir.1982); *United States v. Batimana,* 623 F.2d 1366, 1369 (9th Cir.), *cert. denied,* 449 U.S. 1038, 101 S.Ct. 617, 66 L.Ed.2d 500 (1980).

Farid next argues that the District Court violated his Sixth Amendment right to confrontation by improperly limiting his cross-examination of informant Tony Noble. Because Noble gave a pre-trial statement indicating that Farid was not involved in the drug sale, the defense called him to testify on Farid's behalf. On the stand, however, Noble partially contradicted his prior statement. Defense counsel was permitted to question Noble about inconsistencies between his testimony and the earlier statement, payments he received for being an informant, and his prior criminal involvement. The District Court refused only to allow Noble to answer a question regarding the nature of the crime for which he was then in jail. Because the question involved a pending charge and not a conviction, it was an improper subject for impeachment. See, *e.g.*, *United States v. Dennis,* 625 F.2d 782, 798 (8th Cir.1980); *United States v. Madden,* 482 F.2d 850, 852 (8th Cir.), *cert. denied,* 414 U.S. 1026, 94 S.Ct. 453, 38 L.Ed.2d 318 (1973). Thus, the trial court did not err in limiting the examination. Thereafter, defense counsel made no further attempt to impeach Noble

through a more acceptable line of questioning. In the circumstances, appellant's contention that he was denied effective cross-examination is without merit.

More troublesome is appellant's allegation that the Government failed to disclose impeaching information about informant Tony Noble which the defense specifically requested by pre-trial motion. Together with co-defendant Jones,[3] Farid obtained an order requiring the Government to disclose (1) whether Noble was an informant; (2) all criminal charges within the Government's knowledge filed against Noble in the previous twelve months and their disposition; and (3) any consideration paid to Noble for his work as an informant. The Government disclosed that Noble had two criminal charges pending against him, and that he had received only twenty dollars for gasoline and six dollars for cigarettes in exchange for his work as an informant.

After the trial, appellant learned that one of the St. Paul police officers involved in the drug sale had tried to help Noble in connection with some pending state criminal charges, at least to the extent of obtaining information about the charges. Such assistance may be viewed as "consideration" subject to disclosure under the order. Moreover, records obtained after the trial revealed that Noble had four additional arrests which had not been disclosed to the defense.[1]

It appears that the United States Attorney attempted to comply with the discovery order, but was not informed of either the police officer's actions or the additional arrests. At the time of trial, the Government may have revealed everything it knew or reasonably should have known about Noble. In any event, the undisclosed material does not seem sufficiently important to warrant reversal or a new trial. The Dis-

---

**3.** The District Court granted Farid's motion to sever his trial from Jones's, and Jones later agreed to plead guilty.

**4.** In responding to the discovery order, the Government relied on the records of the St. Paul Police Department. Information about the additional arrests was obtained from a post-trial check of FBI and Minnesota criminal records. None of the arrests resulted in a conviction.

trict Court, which tried the case without a jury, considered the additional information at an evidentiary hearing on appellant's motion for a new trial. The Court then denied the motion, apparently determining that the undisclosed material would not have made a difference. See *United States v. Agurs*, 427 U.S. 97, 112–113, 96 S.Ct. 2392, 2401–2402, 49 L.Ed.2d 342 (1976) (a new trial is justified only if the undisclosed material would have been sufficient to create a reasonable doubt). Therefore, we need not consider, as in the usual case, what effect the information might have had on a jury. We conclude that no due-process violation occurred warranting relief on the basis of the Government's failure to disclose.

Finally, appellant points out that on June 3, 1983, he attempted to plead guilty pursuant to a negotiated plea, but Judge Renner rejected the plea. At the time, Judge Renner indicated that Farid had not admitted sufficient facts to support a conviction for aiding and abetting. The case was set for jury trial before the same judge, but on the day of trial, Farid elected to waive the jury. Judge Renner therefore presided at a trial to the court. Appellant now argues that in failing to recuse himself after hearing Farid's guilty plea, Judge Renner committed plain error requiring reversal even in the absence of an objection below. Ordinarily, a district judge who has heard an attempted guilty plea should not try the case without a jury. See *United States v. Walker*, 473 F.2d 136, 138–39 (D.C.Cir.1972). *But cf. United States v. Gallington*, 488 F.2d 637, 639–40 (8th Cir.1973), *cert. denied*, 416 U.S. 907, 94 S.Ct. 1613, 40 L.Ed.2d 112 (1974) (absent a showing of actual prejudice, decision whether to recuse himself after hearing attempted guilty plea is within judge's discretion in jury-trial context). But here, whatever might have been the case had Farid objected, it was Farid himself who asked Judge Renner to try the case. He made a deliberate tactical decision that he would be better off with a bench trial, apparently on the theory that Judge Renner, having rejected the guilty plea, might have some doubts about his guilt. In the circumstances, this Court should not rescue Farid from his deliberate tactical choice.

The judgment of the District Court is affirmed.