# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-1444

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff/Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Eastern |
| | * | District of Missouri. |
| Jerome Williams, a/k/a Bobo Williams, | * | |
| | * | |
| Defendant/Appellant. | * | |

_____

Submitted: September 14, 1999
Filed:   October 15, 1999

_____

Before RICHARD S. ARNOLD, BRIGHT and LOKEN, Circuit Judges.

_____

BRIGHT, Circuit Judge.

Jerome Williams appeals his convictions on two counts of felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and one count of possession of an unregistered firearm, in violation of 26 U.S.C. § 5841. For these three counts, Williams received a sentence of 288 months (twenty-four years) imprisonment. Williams claims hidden bias in the testimony of Kevin Murray, the government's sole corroborating witness. The bias rested on circumstances indicating that Murray may have testified favorably to the government to avoid revocation of his probation. On appeal Williams raises two issues: (1) the government violated Brady v. Maryland, 373 U.S. 83 (1963), when it failed to disclose Murray's full criminal history, including information about his

probationary status and the possible revocation of his parole, and (2) the district court erred by refusing to allow cross-examination of Murray about pending charges that could support a claim of bias. We affirm the district court because the stipulation, to which both sides ultimately agreed, corrected the government's failure to disclose the information and rendered any erroneous omissions harmless.

## I.    BACKGROUND

James Lawson and Tanya Hanks are common law spouses. Around the time of the incident, they had separated temporarily. Kevin Murray lived in the apartment below Hanks prior to and at the time of the incident. On Sunday, April 5, 1998, Hanks invited Lawson to the apartment, where they met outside and walked into the apartment together. Before going inside, they greeted Kevin Murray, who was outside the building working on his car.

Lawson testified that Jerome Williams, who was waiting inside the apartment, threatened him with a sawed-off shotgun when he entered the kitchen with Hanks.[1] Williams hit Lawson with the gun twice, and then discharged the gun; the blast left Lawson with a head wound. Lawson ran from the apartment to his car as Williams chased him with the gun. Williams then shot out two of Lawson's tires, but Lawson managed to drive to a gas station before he lost consciousness. Murray was still outside working on his car when these events occurred. Williams – according to the government – then ran off and threw the shotgun in a dumpster. Mark Wilderman, a local resident, was walking his dog when he heard a gun blast. He then saw a black male run by him and throw a shotgun in a dumpster. Wilderman was unable to identify Williams as the man who ran by him that day.

---

[1]At trial, the defense suggested that Tanya Hanks and not Jerome Williams had possessed and used the sawed-off shotgun.

The police did not make an arrest on the day of the attack, but on April 8, 1998, law enforcement officers stopped a vehicle with a crooked license plate. Williams was a passenger in that car, and when the police tried to stop the vehicle, Williams jumped from the vehicle and ran. The officers chased him on foot and saw him throw a dark object from his pocket into the bushes. Police recovered a black .38 caliber revolver from the site. Later, Lawson identified Williams as the man who had attacked him.

At trial, Kevin Murray was the single witness able to corroborate Lawson's identification of Williams as his assailant. When subpoenaed, Murray tried to evade testifying at trial because, unbeknownst to the government or defense counsel, he had warrants pending against him for misdemeanor stealing charges in other jurisdictions. The briefs are unclear about the exact charges pending against Murray in other jurisdictions. According to the government, Murray had both a "misdemeanor conviction" against him as well as "pending misdemeanor warrants." According to the defense, Murray was on "probation" and was "wanted in several jurisdictions." It appears from the record that Mr. Murray not only had a list of prior felony convictions that included rape and failure to appear, but was on probation at the time for a misdemeanor stealing conviction and had warrants pending for his arrest on other misdemeanor stealing charges.

The government brought Murray into court to testify on a material witness warrant. At the time the federal prosecutor was preparing Murray as a witness, he discovered from Murray's lawyer, Eric Butts, that Murray had these warrants pending in other jurisdictions. During that conversation, Mr. Butts asked the federal prosecutor to call local prosecutors to inform them that Murray was a government witness in this trial. The federal prosecutor agreed to do so, but informed Mr. Butts that he would not request leniency for Murray. On direct examination, the government questioned Murray about his prior felony convictions, but not the misdemeanor conviction for which he was on probation, nor the pending warrants for stealing. The government also

asked Murray whether he was receiving any benefit for his testimony on direct examination, and Murray responded that he was not.

After Murray had testified and been released as a witness in this case, the federal prosecutor informed defense counsel and the district court about Murray's pending charges, his probationary status, and the promised conversation between the federal and local prosecutors. Once notified, the defense counsel requested that she be allowed to recall the witness and cross-examine him about his prior misdemeanor conviction, probationary status, and pending warrants in order to demonstrate that the witness, facing the possible revocation of his probation, could be biased in favor of the government in the hope that the government would suggest to local prosecutors that they be more lenient with him. When the district court disallowed the cross-examination, the prosecution and defense agreed to a stipulation that would inform the jury of Murray's situation. Without waiving any of defendant's objections, the trial court directed defense counsel to read the stipulation to the jury before closing arguments. The stipulation stated:

> The United States versus Jerome Williams. Stipulation: The parties hereby agree that prior to his testimony, the Government informed Kevin Murray that a Government prosecutor would inform prosecuting attorneys in another jurisdiction where Mr. Murray had misdemeanor warrants pending that he had testified in this case. The Government did not agree to make any request for leniency on Mr. Murray's behalf. So stipulated and agreed by Gabriel Gore . . . .

Trial Tr. (II) at 174.

## II.    DISCUSSION

### A.    Brady Violation

Williams contends that the government violated <u>Brady</u> when it failed to inform defense counsel that Murray was a probationer whose status could be revoked because of pending misdemeanor charges.  "To succeed on a <u>Brady</u> claim, [a] 'defendant must show that the prosecution suppressed the evidence, the evidence was favorable to the accused, and the evidence was material to the issue of guilt or punishment.'"  <u>United States v. Whitehead</u>, 176 F.3d 1030, 1036 (8th Cir. 1999) (quoting <u>United States v. Flores-Mireles</u>, 112 F.3d 337, 339-40 (8th Cir. 1997)).  "[T]he <u>Brady</u> rule applies to impeachment evidence, as well as to exculpatory evidence."  <u>United States v. Wayne</u>, 903 F.2d 1188, 1192 (8th Cir. 1990).

Here, reversal based on a violation of the <u>Brady</u> rule cannot prevail because the error was not prejudicial and amounted to harmless error.  Williams emphasizes that the pending charges against Murray, in the context of Murray's awareness that the government would speak with local prosecutors about his assistance in this trial, raised an inference of bias.  We agree that the government should have disclosed the information regarding the pending warrants, misdemeanor conviction, and probationary status to defense counsel prior to Murray's cross-examination.  Although normally the prosecution need not disclose the mere existence of pending warrants, here the pending warrants underlay the basis for the federal prosecutor's promised communications with local prosecutors.    The evidence of Murray's probationary status and pending warrants, in combination with the promise of a conversation between prosecutors about Murray's role as a government witness, could raise an inference that the defendant was testifying in order to benefit himself.  It is a <u>Brady</u> violation to fail to disclose evidence that a witness is testifying solely to curry the government's favor in his own prosecution.  <u>See</u> <u>Reutter v. Solem</u>, 888 F.2d 578, 581-82 (8th Cir. 1989).  However, the stipulation sufficiently corrected any otherwise material omissions because

–5–

ultimately the jury learned of Murray's entire criminal history except one misdemeanor conviction for which he was on probation. Moreover, defense counsel read the stipulation to the jury before closing arguments; therefore, she had the opportunity to draw the jury's attention to the witness's bias through argument that she otherwise would have had through cross-examination.

### B.      Limitations of Cross-Examination

The limitation on cross-examining Murray also constitutes harmless error. Here, the district court refused to allow cross-examination on the misdemeanor charges because they were "wanteds" or pending charges which he found inadmissible for purposes of impeaching the witness's credibility. This holding does not violate the Sixth Amendment, see Wise v. Bowersox, 136 F.3d 1197, 1205 (8th Cir. 1998), but introduction of such evidence is permissible under Rule 608. The presence of outstanding warrants together with defendant's status as a probationer may serve as a basis to contend that these circumstances influenced the witness to testify favorably for the prosecution.[2] While the district court may have erred by rejecting a limited cross-examination on this topic, that decision did not sufficiently prejudice the defendant to warrant reversal.

---

[2]Evidence of witness bias generally should be made available to the jury. See 4 JACK B. WEINSTEIN ET AL., WEINSTEIN'S FEDERAL EVIDENCE § 607.04[1] (2d ed. 1999) ("Since bias of a witness is always significant in assessing credibility, the trier of fact must be sufficiently informed of the underlying relationships, circumstances, and influences operating on the witness to determine whether a modification of testimony reasonably could be expected as a probable human reaction.") (footnote omitted); see also Davis v. Alaska, 415 U.S. 308, 317 (1974) ("[T]he jurors were entitled to have the benefit of the defense theory [of witness bias] . . . so that they could make an informed judgment as to the weight to place on [the witness's] testimony . . . .").

## III. CONCLUSION

For the reasons stated above, we affirm the convictions.

A true copy.

    Attest:

        CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.