# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-2593

_____

Robert L. Lingle,                *
                                     *

        Appellant,       *
                                     *    Appeal from the United States

    v.                        *    District Court for the
                                     *    Northern District of Iowa.

State of Iowa; David Scurr,      *
                                     *

        Appellees.       *

_____

Submitted:  September 14, 1999

Filed:  November 19, 1999

_____

Before WOLLMAN, Chief Judge, HEANEY and BEAM, Circuit Judges.

_____

WOLLMAN, Chief Judge.

Robert Lingle appeals the district court's[1] denial of his petition for habeas corpus pursuant to 28 U.S.C. § 2254.  For the reasons stated below, we affirm.

------

[1]The Honorable Donald E. O'Brien, Senior United States District Judge for the Southern District of Iowa.

# I.

Lingle is serving a 52-year prison sentence based on his conviction of two counts of sexual abuse in the second degree and one count of indecent contact with a child. This habeas corpus petition involves a medical report for T.L., one of three young girls who testified at trial that Lingle sexually abused her at his home on several occasions. T.L.'s allegations formed the basis of one count of sexual abuse in the second degree.

At trial, T.L. testified that Lingle had brought her into a bedroom on several occasions, removed his and her pants, and touched various parts of her body with his hands and genitals. T.L. was nine years old and in fourth grade at the time of trial, and had been in kindergarten, first grade, and second grade when the alleged incidents occurred. She testified that one time, Lingle placed his finger in her vagina "a little bit," and that on another occasion he "put his private in mine a little bit." T.L. stated that this "hurt" her, and that she "thought" she had started to bleed.

Approximately two years after the molestation ended, a doctor examined T.L. in connection with an investigation of Lingle. The report based on that examination contained T.L.'s allegations and the notation "hymen intact." The report was not introduced into evidence at Lingle's trial several months later, and Lingle's counsel has testified that he was not made aware of it at the time. In 1985, a jury convicted Lingle on all counts.

Lingle filed a federal habeas petition in 1990, and first learned of the medical report concerning T.L. in 1992. He later sought a medical expert to testify regarding the injuries T.L. would have incurred if the events she described had actually happened. The first report Lingle obtained indicated that a torn hymen can sometimes heal itself and concluded that "[n]o physical evidence was found to support [T.L.'s] statements, but there is nothing in the physical exam that refutes her statements, either."

-2-

Because Lingle did not believe this conclusion helped him, he requested and received permission from the district court to seek a second opinion. In 1997 Lingle found a doctor who indicated that a torn hymen cannot heal itself. This doctor later refused to cooperate with Lingle, however, and the district court once again granted Lingle permission to pursue a different expert. The last doctor Lingle found concluded that the report did not prove or disprove T.L.'s story because it was "incomplete or inadequate."

In the district court, Lingle argued for postconviction relief based on prosecutorial misconduct and ineffective assistance of counsel. Both claims revolved around the 1984 report, which Lingle contends constitutes exculpatory evidence. The district court rejected both arguments on the merits, and further held that the ineffective assistance claim was barred because of procedural default. See D. Ct. Order of May 6, 1998, at 26. On appeal, Lingle has abandoned his claim of ineffective assistance of counsel, but challenges the denial of his claim of prosecutorial misconduct, arguing that the district court erred in finding that the report was not reasonably likely to have produced a more favorable result at trial.

## II.

We review the district court's findings of fact for clear error and its conclusions of law de novo. See Bounds v. Delo, 151 F.3d 1116, 1118 (8th Cir. 1998). We apply a presumption of correctness to the state court's findings of fact. See 28 U.S.C. § 2254(e)(1); Bounds, 151 F.3d at 1118. We may grant the writ only if the state court's adjudication of the claims "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1).

The only substantive issue in this case is whether it was prosecutorial misconduct not to disclose the 1984 report to Lingle prior to or during his trial. We hold that it was not.

The ultimate interest of the government in any criminal prosecution "is not that it shall win a case, but that justice shall be done." Berger v. United States, 295 U.S. 78, 88 (1935). For this reason, at or before any criminal trial, the prosecution is required to divulge all evidence favorable to the accused that is material either to guilt or to punishment. See Brady v. Maryland, 373 U.S. 83, 87 (1963). This duty to disclose exculpatory evidence, known as the Brady rule, is incumbent on the government "irrespective of the good faith or bad faith of the prosecution," id., and regardless of whether the defense has made a formal request, see United States v. Agurs, 427 U.S. 97, 106-7 (1976).

Evidence is considered "material" for purposes of the Brady rule where a "reasonable probability" exists that, "had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682 (1985). "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." Kyles v. Whitley, 514 U.S. 419, 434 (1995). It is therefore the responsibility of the prosecutor to discern "when the suppression of evidence has come to portend such an effect on a trial's outcome as to destroy confidence in its result." Id. at 439.

The prosecutor's burden of disclosure is a heavy one, and although the government disputes the issue, we shall assume for purposes of this opinion that the state never provided the report to Lingle and that his counsel was unaware of its existence. Even so, we agree with the district court's determination that the report would not have materially affected the likelihood of Lingle's conviction.

First, even if the report showed conclusively that penetration did not occur, Lingle could still have committed sexual abuse in the second degree according to the statutory definition of that crime. Under Iowa law, a person commits sexual abuse in the second degree by engaging in a "sex act" with a child under age twelve. Iowa Code §§ 709.1(3); 709.3(2). "Sex act" is defined as "any sexual contact between two or more persons." Iowa Code § 702.17. "Sexual contact," in turn, includes not only penetration but also mere touching of the genitalia of one person by the fingers or genitalia of another. Id.

For Lingle's conviction to be valid, the jury needed to be convinced only that one such contact took place. See State v. Constable, 505 N.W.2d 473 (Iowa 1993). T.L. alleged that digital and genital penetration occurred "a little bit" on two occasions. However, whether penetration occurred "a little bit," "a lot," or not at all is immaterial because only touching need be shown in order to establish sexual abuse in the second degree. See Iowa Code §§ 702.17, 709.1, 709.3.

Second, as indicated by the conflicting statements of Lingle's own experts, it is questionable whether the 1984 report -- based on a medical examination conducted two years after the fact -- even indicates that no penetration could have occurred. Although one expert wrote that a hymen cannot heal itself, both of the others concluded that the vague observation "hymen intact" did not necessarily contradict T.L.'s testimony.

Finally, Lingle's conviction on this count was not based solely on T.L.'s testimony. Her testimony was inferentially corroborated by that of two other girls, who claimed to have had very similar experiences with Lingle. The girls' testimony was explicit, detailed, and noncontradictory. Moreover, the jury was made aware that Lingle himself had given a statement to police in which he admitted to having sexual contact with these children, although he later denied the incidents had taken place.

Perhaps, as the district court observed, the 1984 report could have been used to "raise doubts in the jurors' minds as to Lingle's guilt or innocence." D. Ct. Order of May 6, 1998, at 24-25. There is a considerable difference, however, between merely "raising doubts" and the creation of a "reasonable probability" that the trial's "result . . . would have been different." <u>Bagley</u>, 473 U.S. at 682. Because the 1984 report does not meet this standard, its absence from Lingle's trial does not "destroy confidence" in the reliability of his conviction. <u>Kyles</u>, 514 U.S. at 439.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.