# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-2548

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeals from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Ralph Eugene Morton, | * | |
| | * | |
| Appellant. | * | |

_____

No. 04-2549

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | * |
| v. | * |
| | * |
| Kenneth Lee Johnson, a.k.a. Kenneth | * |
| Johnson, Jr., | * |
| | * |
| Appellant. | * |

_____

Submitted: February 14, 2005
Filed:  June 17, 2005

_____

Before MORRIS SHEPPARD ARNOLD, BOWMAN, and GRUENDER, Circuit
    Judges.
                              _____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

    Ralph Morton appeals his conviction on one count of conspiracy to distribute
five grams or more of cocaine base (crack cocaine), *see* 21 U.S.C. §§ 841(a)(1),
(b)(1)(B), 846.  He argues that the district court's jury instructions constructively
amended the indictment under which he was charged, that there was insufficient
evidence to support his conviction, that the prosecution engaged in misconduct, and
that the district court erroneously restricted his counsel's cross-examination of a
witness and his counsel's closing argument.  We affirm.

    Kenneth Johnson pleaded guilty to one count of conspiracy to distribute crack
cocaine, *see id.*, but appeals his sentence.  He contends that the government breached
the plea agreement by not moving pursuant to U.S.S.G. § 3E1.1(b) for a one-level
reduction in his offense level.  We vacate his sentence and remand for resentencing.


                                I.
                                A.
    A grand jury charged Mr. Morton with conspiring with his wife (Marilyn
Morton) and David Hyatt to distribute crack cocaine, although the government
subsequently dismissed the charge against Ms. Morton after she pleaded guilty to
another count in the same indictment.  Messrs. Morton and Hyatt were tried together.
At trial, the government argued that only Messrs. Morton and Hyatt conspired
together.  The jury convicted Mr. Morton but acquitted Mr. Hyatt.

    Mr. Morton argues that, under the so-called rule of consistency, the acquittal
of his only alleged co-conspirator requires reversal of his conspiracy conviction.  *See*
*Turinetti v. United States*, 2 F.2d 15, 17 (8th Cir. 1924); *cf. Cortis v. Kenney*, 995

                               -2-

F.2d 838, 840 (8th Cir. 1993). We believe, however, that this rule did not survive *United States v. Powell*, 469 U.S. 57 (1984), which held that "inconsistent verdicts on the same indictment as to the same defendant are unobjectionable," *United States v. Fuller*, 374 F.3d 617, 623 (8th Cir. 2004), *cert. denied*, 125 S. Ct. 926 (2005). *See United States v. Zuniga-Salinas*, 952 F.2d 876, 877-78 (5th Cir. 1992) (en banc); *United States v. Bucuvalas*, 909 F.2d 593, 597 (1st Cir. 1990); *United States v. Mancari*, 875 F.2d 103, 104 (7th Cir. 1989).

Although *Powell* involved inconsistent verdicts on multiple counts as they pertained to a single defendant, the reasons that the Court gave to justify its decision apply equally to a conviction of one defendant that is inconsistent with a verdict of acquittal of another defendant on the same count. *See Zuniga-Salinas*, 952 F.2d at 877-78; *Mancari*, 875 F.2d at 104. Those reasons are the government's inability due to the double jeopardy clause to challenge acquittals that are inconsistent with convictions, the jury's inherent power to be lenient, the undesirable speculation that would result if jury verdicts were assessed for inconsistencies, and the protection otherwise afforded defendants against jury irrationality by courts' review of the sufficiency of the evidence. *Powell*, 469 U.S. at 65-67. We therefore reject Mr. Morton's argument as meritless.

B.

Mr. Morton also contends that the evidence was not sufficient to sustain his conviction. Only if no "interpretation of the evidence ... would allow a reasonable-minded jury to conclude guilt beyond a reasonable doubt" will we reverse a jury's verdict on the grounds of insufficient evidence. *United States v. Galvan*, 961 F.2d 738, 740-41 (8th Cir. 1992). Mr. Morton argues that this standard of review does not apply to his case because the standard assumes a properly instructed jury and the district court improperly instructed the jury on the elements of conspiracy (an alleged error that we address below). But Mr. Morton conflates the convicting jury with the "reasonable-minded" jury. The standard of review we apply does not invoke the

viewpoint of the jury that convicted Mr. Morton; instead, we ask whether an objective "reasonable-minded" jury could have convicted him on the evidence offered at trial. Whether the convicting jury was properly instructed therefore does not affect our review of the sufficiency of the evidence. *See United States v. Bomski*, 125 F.3d 1115, 1118 (7th Cir. 1997), *cert. denied*, 522 U.S. 1098 & 1134 (1998).

Our examination of the record reveals that the evidence introduced at trial was clearly sufficient to convict Mr. Morton of conspiring with Mr. Hyatt to distribute crack cocaine. An informant, intending to purchase two ounces of crack, went to Mr. Morton's home. There the informant and Mr. Morton agreed that Mr. Morton would take the informant's money for the purchase and would leave to obtain the crack cocaine; while Mr. Morton was gone, the informant would stay at the Mortons' home with Ms. Morton. Before Mr. Morton left, he called someone on the telephone and told his interlocutor "that he needed them two ballparks," presumably referring to the two ounces of crack cocaine that the informant wished to purchase. Mr. Morton then drove away in his Hyundai and returned in a Cadillac with Mr. Hyatt, who owned the Cadillac. Once back, Mr. Morton gave the informant a soda bottle, which had a secret compartment in which crack was hidden. After the informant admired the ingenuity of the soda bottle, Mr. Hyatt offered to sell it to the informant, who bought it. During the entire transaction, the informant carried a radio transmitter, which allowed his conversations with the Mortons and Mr. Hyatt to be recorded to the extent that they were audible. Also, a video camera captured the events that occurred outside of the Mortons' home within the camera's line of vision. After the sale to the informant was complete, Mr. Hyatt drove Mr. Morton to his parked Hyundai. Then Mr. Hyatt took his Cadillac to a garage, parked it, and drove away in Mr. Morton's Hyundai, which had followed the Cadillac to the garage. From all of this evidence, a reasonable jury could infer that Messrs. Hyatt and Morton "acted in concert to achieve a common goal ... or acted with a tacit understanding" and therefore conspired. *United States v. Agofsky*, 20 F.3d 866, 870 (8th Cir. 1994) (internal citation omitted), *cert. denied*, 513 U.S. 909 & 949 (1994).

C.

Mr. Morton next contends that the district court's jury instructions added "unnamed persons" to the list of conspirators set out in the indictment and thereby constructively amended the indictment, which is reversible error *per se*. *See United States v. Stuckey*, 220 F.3d 976, 981 (8th Cir. 2000). The indictment charged Mr. Morton with conspiring with Mr. Hyatt and Ms. Morton; the indictment did not include anyone else, named or unnamed, in the conspiracy. The district court, however, instructed the jury that Mr. Morton must have "reached an agreement or understanding with at least one other person" and that "[i]t makes no difference whether that person ... is named in the ... indictment, excluding the government agent."

To constitute a constructive amendment of an indictment, jury instructions must have "modif[ied] the essential elements of the offense charged so that a substantial likelihood exists that the defendant was convicted of an offense other than that charged in the indictment." *United States v. Johnson*, 934 F.2d 936, 941 (8th Cir. 1991). The existence of parties with whom the defendant reached an agreement or understanding is an essential *actus reus* element of conspiracy, *see United States v. Fitz*, 317 F.3d 878, 881 (8th Cir. 2003); *United States v. Hoelscher*, 764 F.2d 491, 494 (8th Cir. 1985), and the district court's jury instruction modified this element by permitting the jury to find that Mr. Morton had conspired with an unnamed person (or unnamed persons) when the indictment charged that he had conspired only with two named persons. The likelihood that the jury convicted Mr. Morton of conspiring with anyone other than Mr. Hyatt or Ms. Morton, however, is not substantial. The government maintained at trial that Mr. Morton conspired only with Mr. Hyatt. *Cf. United States v. Bryant*, 349 F.3d 1093, 1097 (8th Cir. 2003); *United States v. Novak*, 217 F.3d 566, 575 (8th Cir. 2000), *cert. denied*, 531 U.S. 1043 (2000). Indeed, during closing argument the government asserted that, when Mr. Morton requested "them two ballparks" during a phone call with an unidentified interlocutor, the interlocutor was Mr. Hyatt. Besides this phone conversation, the record contains no

evidence of an interaction between Mr. Morton and any person not named in the indictment that could be construed as evidence of a conspiracy. Further, the district court instructed the jury that Mr. Morton was "not on trial for any act or conduct not alleged in the ... indictment." *Cf. United States v. Pinque*, 234 F.3d 374, 377 (8th Cir. 2000), *cert. denied*, 532 U.S. 1044 (2001). This instruction, combined with the government's arguments at trial regarding the conspiracy's scope, prevented the reference in another instruction to unnamed persons from constructively amending the indictment.

## D.

In Mr. Morton's last assignments of error, he contests the district court's denial of his motion to dismiss the indictment for prosecutorial misconduct and the limits that the district court imposed on the scope of his counsel's cross-examination of the informant and on the scope of his counsel's closing argument. Before trial, the government disclosed to Mr. Morton the informant's past criminal history. Omitted, however, were two pending gross misdemeanor charges relating to an instance of alleged child abuse, which Mr. Morton's counsel discovered on his own before cross-examining the informant.

Mr. Morton contends that the government's failure to disclose the pending charges was prosecutorial misconduct that requires the reversal of his conviction. For Mr. Morton to succeed, he must show that "the prosecutor's conduct was improper and prejudicial enough to deprive the defendant of a fair trial." *United States v. Thropay*, 394 F.3d 1004, 1007 (8th Cir. 2005), *cert. denied*, No. 04-9617, 2005 WL 854612 (U.S. May 16, 2005). We conclude, however, that the prosecutor did not act improperly, for he had no duty to disclose the pending charges. Under *Giglio v. United States*, 405 U.S. 150, 153-55 (1972), the government must disclose matters that affect the credibility of prosecution witnesses. Thus, for example, a defendant is entitled to know of a promise to drop charges against a key witness if that witness testifies for the government. *See Clay v. Bowersox*, 367 F.3d 993, 1000 (8th Cir.

2004), *cert. denied*, No. 04-8018, 2005 WL 40898 (U.S. May 16, 2005). But here the record reveals only the existence of two pending misdemeanor charges in a different jurisdiction, which, without more, is not evidence that the informant was given such an inducement. *Cf. United States v. Williams*, 194 F.3d 886, 889 (8th Cir. 1999), *cert. denied*, 529 U.S. 1078 (2000); *United States v. Hamilton*, 48 F.3d 149, 154-55 (5th Cir. 1995); *United States v. Sellers*, 906 F.2d 597, 603 (11th Cir. 1990).

Next, Mr. Morton asserts that the limits that the district court imposed on his counsel's cross-examination of the informant violated the confrontation clause of the sixth amendment. Normally counsel may not impeach a witness with pending misdemeanor charges. *See* Fed. R. Evid. 405, 608, 609; *United States v. Farid*, 733 F.2d 1318, 1320 (8th Cir. 1984). Because the government failed to object when Mr. Morton's counsel asked the informant whether any charges were pending against him, and because the informant lied in response, the district court allowed counsel to impeach the informant with the existence of the pending misdemeanor charges while acknowledging that "ordinarily we stay out of this [subject matter]." Since the informant had testified on direct examination that he collaborates with the police in part due to drug dealers' lack of "respect for the young people," Mr. Morton's counsel asked to be allowed to examine the informant on the nature of the pending charges in order to call into question the informant's "respect for the young people." The district court, however, refused to widen the permissible scope of questioning. Later in the course of his cross-examination, the informant volunteered his version of the alleged criminal conduct underlying the misdemeanor charges, which contradicted the criminal complaint. When Mr. Morton's counsel attempted to question the informant about these contradictions, the district court again refused to widen the scope of cross-examination, citing the lack of foundation for the allegations in the complaint.

For this restriction to have violated the confrontation clause, Mr. Morton must show "that a reasonable jury might have received a significantly different impression

of [the informant's] credibility had counsel been permitted to pursue the proposed line of cross-examination." *United States v. Fox*, 396 F.3d 1018, 1023 (8th Cir. 2005), *overruled on other grounds*, *United States v. Pirani*, 406 F.3d 543, 550 (8th Cir. 2005) (en banc). Because Mr. Morton already had demonstrated to the jury that the informant lied about the existence of pending charges, and because the pending charges were not drug-related, the additional questions that Mr. Morton sought to ask would not have left "a reasonable jury" with "a significantly different impression of [the informant's] credibility," and therefore Mr. Morton's argument fails.

Finally, Mr. Morton maintains that the limits that the district court placed on his counsel's closing argument violated his right to due process. Because the government, for the reasons already indicated, owed no duty to disclose its witness's pending misdemeanor charges, Mr. Morton had no right to argue to the jury that, due to the government's failure to disclose the pending charges, the government and its witnesses could not be trusted.

II.

Mr. Johnson was charged in the same bill of indictment as was Mr. Morton, but the grand jury indicted Mr. Johnson on a different count of conspiracy to distribute crack cocaine. Mr. Johnson pleaded guilty to a lesser-included offense of the offense laid in the count on which he was indicted. His plea agreement with the government includes a promise by the government to recommend a three-level reduction in his offense level, provided that he, among other things, "commit[] no act from this time forward that is inconsistent with an acceptance of responsibility." In addition, Mr. Johnson agreed to be sentenced under the United States Sentencing Guidelines.

At Mr. Johnson's sentencing hearing, the government recommended a two-level reduction for acceptance of responsibility, *see* U.S.S.G. § 3E1.1(a). Although the government recognized that Mr. Johnson had accepted responsibility for his offense sufficiently to justify reducing his offense level by two levels, it refused to move for

an additional one-level reduction pursuant to U.S.S.G. § 3E1.1(b), which, unlike § 3E1.1(a), requires a motion from the government before the district court may decrease an offense level pursuant to it. According to the government, in Mr. Johnson's testimony at the trial of Keilano Gurley, one of his alleged co-conspirators, Mr. Johnson initially denied conspiring with Mr. Gurley before admitting to the facts underlying the conspiracy between them. The government argues that, as a result, Mr. Johnson violated his agreement to "commit[] no act ... that is inconsistent with an acceptance of responsibility," thereby releasing the government from its obligation to move for a one-level reduction in Mr. Johnson's offense level.

Although the government construes Mr. Johnson's testimony as a denial of the offense of conspiracy, we think that this is clearly wrong. The government makes much of Mr. Johnson's inability at Mr. Gurley's trial to remember being asked by the district court at his change-of-plea hearing with whom he had conspired, which, the government asserts, the district court did ask. After reviewing the record of Mr. Johnson's change-of-plea hearing, however, we have not found any such question and conclude that Mr. Johnson's memory was more accurate than the government's. The government also draws our attention to Mr. Johnson's response at Mr. Gurley's trial to the government's question, "Who did you conspire with?" Mr. Johnson answered, "Well, I did it, I did it on my own. But, [Mr. Gurley] called me and –," at which point the government asked another question. Given that Mr. Johnson earlier testified that Mr. Gurley put him in contact with the informant but that he (Mr. Johnson) sold the crack cocaine to the informant, Mr. Johnson's later declaration that he "did it on [his] own" and that Mr. Gurley called him merely explained the relative roles of Mr. Gurley and him in the drug transaction, and did not deny the conspiracy's existence.

Indeed, the government concedes that, later during the cross-examination, Mr. Johnson admitted that Mr. Gurley was involved in the drug transaction and that

he (Mr. Johnson) told the government informant to contact Mr. Gurley in order to obtain the larger amounts of crack cocaine in which the informant expressed interest. Although Mr. Johnson may not have described Mr. Gurley's or his conduct as part of a "conspiracy," his failure to use a magic word does not make his testimony inconsistent with acceptance of responsibility when he admitted to "the conduct comprising the offense[] of conviction," U.S.S.G. § 3E1.1, comment. (n.1(a)). *Cf. United States v. Greger*, 339 F.3d 666, 672-73 (8th Cir. 2003).

The government also argues that, even if Mr. Johnson did not deny conspiring with Mr. Gurley, he minimized Mr. Gurley's role in the conspiracy, which is inconsistent with accepting responsibility for the conspiracy that occurred. We do not see how Mr. Johnson's testimony, assuming it aggrandized his involvement in the conspiracy to the detriment of Mr. Gurley's role, was anything but consistent with acceptance of responsibility for his offense. *Cf. United States v. Arambula*, 238 F.3d 865, 871 (7th Cir. 2001). Even if the plea agreement's phrase "inconsistent with an acceptance of responsibility" is ambiguous and thus susceptible to the government's interpretation, "any ambiguities in [plea] agreements will be read against the Government," *United States v. Andis*, 333 F.3d 886, 890 (8th Cir. 2003) (en banc), *cert. denied*, 540 U.S. 997 (2003).

Because Mr. Johnson abided by the plea agreement, the government breached the agreement by refusing to move for a one-level reduction pursuant to § 3E1.1(b). (We take the government's promise to recommend a three-level reduction in exchange for Mr. Johnson's acceptance of responsibility to mean that it was obligated to recommend a two-level reduction under § 3E1.1(a) and to move for an additional one-level reduction under § 3E1.1(b).) Although we have not had occasion to apply § 3E1.1(b) as amended by § 401(g)(1)(A) of the PROTECT Act, Pub. L. 108-21, 117 Stat. 650, 671 (2003), which makes a motion of the government a prerequisite for the reduction, we have addressed breaches of plea agreements in the context of U.S.S.G. § 5K1.1, which similarly requires a motion of the government before a district court

-10-

may depart downward. When the government has breached an agreement to move for a downward departure under § 5K1.1, we have held that the affected defendant was entitled to resentencing, *United States v. Johnson*, 241 F.3d 1049, 1055 (8th Cir. 2001), unless the government shows that its breach did not affect the sentence imposed, *see United States v. Goings*, 200 F.3d 539, 543-45 (8th Cir. 2000).

From the record, we cannot confidently say what sentence the district court would have imposed had the government made a motion. The district court recognized that it lacked the authority to reduce the offense level absent a motion by the government and considered the government's decision not to move under § 3E1.1(b) to be a "close call." Also, even though Mr. Johnson's sentence of 97 months was within the overlap between the offense levels of 27 and 28, it was at the bottom of the range for his offense level of 28 and category III criminal history, leading us to believe that the district court might have imposed a lesser sentence had Mr. Johnson's offense level been 27. We therefore remand the case for resentencing.

## III.

We affirm Mr. Morton's conviction, but we vacate Mr. Johnson's sentence, remand for resentencing, and direct the government to file a motion for a reduction in Mr. Johnson's offense level in accordance with the plea agreement. At resentencing, the district court will be obligated to follow the principles outlined in *United States v. Booker*, 125 S. Ct. 738 (2005).

_____