**Rosalie S. SPARKS, Plaintiff,**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security, Defendant.**

**Civil Action No. 04–G–3496–NE.**

United States District Court,
N.D. Alabama,
Northeastern Division.

June 14, 2006.

---

Darryl W. Hunt, Clark & James LLC, Birmingham, AL, for Plaintiff.

Lane H. Woodke, U.S. Attorney's Office, Birmingham, AL, Stephen Thompson, Social Security Administration–Office of General Counsel, Atlanta, GA, for Defendant.

## MEMORANDUM OPINION

GUIN, District Judge.

The plaintiff, Rosalie S. Sparks, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security Benefits. Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g).

### STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir.1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloods-*

*worth,* at 1239 (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth,* at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled. The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months...." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i). For the purposes of establishing entitlement to disability benefits, "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R. § 404.1520(a)-(f). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;

(2) whether she has a severe impairment;

(3) whether her impairment meets or equals one listed by the Secretary;

(4) whether the claimant can perform her past work; and

(5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala,* 998 F.2d 473, 477 (7th Cir.1993); *accord McDaniel v. Bowen,* 800 F.2d 1026, 1030 (11th Cir.1986). "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job." *Pope,* at 477; *accord Foote v. Chater,* 67 F.3d 1553, 1559 (11th Cir.1995).

In the instant case, the ALJ, Richard W. Gordon, determined the plaintiff met the first two tests, but concluded she did not suffer from a listed impairment. The ALJ found the plaintiff was able to perform her past relevant work, and accordingly, found her not disabled.

## THE STANDARD WHEN THE CLAIMANT TESTIFIES HE SUFFERS FROM PAIN OR OTHER SUBJECTIVE SYMPTOMS

▇ In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." *Foote,* at 1560.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote,* at 1560 (quoting *Holt v. Sullivan,* 921 F.2d 1221, 1223 (11th Cir.1991). In this circuit medical evidence of pain itself, or of its intensity, is not required.

> While both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain

alleged, *neither requires objective proof of the pain itself.* Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the Hand standard *a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself. See* 20 CFR §§ 404.1529 and 416.929; *Hale* at 1011.

*Elam v. Railroad Retirement Bd.,* 921 F.2d 1210, 1215 (11th Cir.1991)(parenthetical information omitted)(emphasis added). This same standard applies to testimony about other subjective symptoms. Furthermore, it must be kept in mind that "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." Foote at 1561. Therefore, if a claimant testifies he suffers from pain or other subjective symptoms at level that would prevent work and satisfies the three part pain standard, he must be found disabled unless that testimony is properly discredited.

▮▮ When the Commissioner fails to credit a claimant's testimony about pain or other subjective symptoms, he must articulate reasons for that decision.

It is established in this circuit that if the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the Secretary be supported by substantial evidence.

*Hale v. Bowen,* 831 F.2d 1007, 1012 (11th Cir.1987). Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's testimony, or if his reasons are not supported by substantial evidence, the testimony of the plaintiff about his subjective symptoms must be accepted as true.

## THE STANDARD FOR REJECTING THE TESTIMONY OF A TREATING PHYSICIAN

▮▮ As the Sixth Circuit has noted: "It is firmly established that the medical opinion of a treating physician must be accorded greater weight than those of physicians employed by the government to defend against a disability claim." *Hall v. Bowen,* 837 F.2d 272, 276 (6th Cir.1988). "The testimony of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986); *accord Elam v. Railroad Retirement Bd.,* 921 F.2d 1210, 1216 (11th Cir. 1991). In addition, the Commissioner "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight...." *MacGregor,* 786 F.2d at 1053. If the Commissioner ignores or fails to properly refute a treating physician's testimony, as a matter of law that testimony must be accepted as true. *MacGregor,* 786 F.2d at 1053; *Elam,* 921 F.2d at 1216. The Commissioner's reasons for refusing to credit a claimant's treating physician must be supported by substantial evidence. *See MacGregor,* 786 F.2d at 1054; *cf. Hale v. Bowen,* 831 F.2d 1007, 1012 (11th Cir.1987)(articulation of reasons for not crediting a claimant's subjective pain testimony must be supported by substantial evidence).

## DISCUSSION

In April 2000 the plaintiff was referred by her treating physician to Dr. Edward R. Green, MD, who is apparently a psychiatrist. Dr. Green diagnosed "panic disor-

der with agoraphobia" and "social phobia." [R 147] On a visit of May 10, 2000, Dr. Green noted that she had suffered "[n]o full panic attacks" was "less anxious since she increased the clonazepam dose." [R 144] However, Dr. Green noted that she "[c]ontinues to avoid social situations in which anxiety might be a problem." [R 144] The mental status exam revealed the plaintiff's affect to be less anxious and not depressed. [R 144]

On September 19, 2000, Dr. Green's notes indicate that she was "[s]till having generalized anxiety with a marked tendency to worry about health issues." [R 142] She reported that she continued to have "full panic attacks at times" with the last episode occurring "when she was at the hairdresser." [R 142] She reported "avoiding activities because of concern about panic including being unwilling to drive beyond a certain range and unwilling to do things like attend church." [R 142] The plaintiff reported that she "continues to have episodes of intense anxiety when she feels that she is being assessed by others." [R 142] It was noted that "[s]he decided to return because she has not made progress in dealing with all of this." [R 142] Dr. Green's mental status examination revealed the plaintiff's "[a]ffect [was] moderately anxious with her focused on physical health worries but not depressed." [R 142] The plaintiff's last visit to Dr. Green was on October 10, 2000. She reported "generalized anxiety and some possible partial panic attacks in which she will feel burning sensations on

her skin for periods of time." [R 141] It was noted that she was "functioning overall to her usual level with her still avoiding certain activities due to the anxiety." [R 141] The mental status examination revealed the plaintiff's affect was "moderately anxious and mildly depressed." [R 141]

On September 27, 2002, the Commissioner's consultative psychologist, Dr. Arnold, diagnosed the plaintiff with the following:

- Panic attacks with agoraphobia
- Social anxiety disorder
- Dysthymia, early onset

[R 243] Dr. Arnold concluded that the plaintiff "would likely be moderately to severely impaired in the work place." [R 243]

The plaintiff was also treated by Debra Williams, D.O., who practices in the area of general psychiatry. [R 287] In December 2002 Dr. Williams diagnosed the plaintiff with hypochondriasis; social phobia; generalized anxiety disorder with panic attacks; and major depressive disorder, recurrent. [R 287] She gave the plaintiff a GAF score of 62.[1] [R 287] Dr. Williams rated the plaintiff's anxiety, panic and social communication problems as moderate. [R 287] "Social Phobia" was noted as a manifestation of the plaintiff's social and communication problems. [R 287] Dr. Williams also noted that the plaintiff's insight was limited, noting that "fear causes her to make poor judgments such as stopping meds." [R 290]

---

1. The Global Assessment of Functioning (GAF) Scale is used to report an individual's overall level of functioning. *Diagnostic and Statistical Manual of Mental Disorders* 30 (4th Edition) ("DSM–IV"). A GAF of 61–70 is defined as some mild symptoms (e.g., depressed mood and mild insomnia), or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally function-

ing pretty well, with some meaningful interpersonal relationships. DSM–IV–TR, 34. The Commissioner has acknowledged that GAF scores do not have a "direct correlation to the severity requirements in our mental disorders listings." 65 Fed.Reg. 50,746 at 50,764–65 (August 21, 2000). The GAF score is not an assessment of a claimant's ability to work, but a global reference scale to aid in the treatment of an ongoing condition.

The non-examining state agency medical consultant completed a functional capacity assessment dated October 17, 2002. That assessment included the following limitation:

> She needs a flexible work schedule in a spaced setting with all allowable rest breaks. Contact with the public [and] co-workers should be casual [and] limited, and supervision tactful [and] supportive. Changes in the work setting should be gradually introduced, and while she can travel freely within a familiar area, she should not have to travel to distant or strange locations, or to crowded places.

[R 263]

Dr. Rogers treated the plaintiff from February 11, 2003, through at least December 9, 2003. Dr. Rogers' treatment notes show that the plaintiff underwent nine therapy sessions. The plaintiff's treatment progress was noted to be "slow" until the final treatment note, which indicated the plaintiff had "regressed." The final treatment note begins: "Hell in a basket." Her mood was noted to be liable and her affect labile. Dr. Rogers noted that the plaintiff's therapy "has been sporadic [and] crisis based—little opportunity for sustained therapy—She does not follow through on recommendations." [R 320]

Dr. Rogers completed an RFC evaluation indicating the plaintiff would have moderate restrictions in activities of daily living and difficulty in maintaining social functioning. [R 317] Dr. Rogers indicated she would have marked "deficiencies of concentration, persistence, or pace resulting in frequent failure to complete tasks in a timely manner (in work setting or elsewhere)." Dr. Rogers also indicated the plaintiff would have a marked "impairment of ability to respond to customary work pressures." Dr. Rogers opined that the plaintiff would have moderate restrictions in her ability in a work setting to: "Understand, carry out, and remember instructions," "[r]espond appropriately to supervision," "[r]espond appropriately to co-workers," and "[p]erform simple tasks." [R 318] He indicated she would have a marked restriction in her ability to "[p]erform repetitive tasks in a work setting." [R 318] Dr. Rogers diagnosed the plaintiff as suffering from "Major Depression, recurrent, moderate" and "Personality Disorder NOS with dependent features." [R 319]

The plaintiff testified that she suffers from panic attacks that render her unable to work for 2–3 hours thereafter. [R 370] She testified that these attacks happen 2–3 times per week at times. [R 368] The plaintiff also testified that on some days she stayed in bed because of feeling "tired and depressed and worried and scared...." [R 370] She testified that this occurred "probably once a week" and that she "might stay in bed for two days." [R 371] The vocational expert (VE) testified that if the plaintiff's testimony were true, it would preclude all work. [R 384] Therefore, unless the plaintiff's testimony is properly discredited, she is disabled within the meaning of the Social Security Act.

In the present case the ALJ found the plaintiff's testimony not credible. He also refused to credit the residual functional capacity evaluation ("RFC") of the plaintiff's treating psychologist, Dr. Jon Rogers; the opinion of the Commissioner's consulting psychologist that the plaintiff "would likely be moderately to severely impaired in the work place;" and the portion of the RFC of the state agency medical consultant restricting the plaintiff to limited contact with co-workers and the public. The ALJ articulated two reasons to support his refusal to credit the plaintiff's testimony and the opinions of her treating psychologist.

■■■ First, the ALJ asserts that the plaintiff's "activities appear minimally restricted" and are inconsistent with her testimony and the limitations imposed by the treating and examining psychologists. [R 15] The activities recited by the ALJ include:

- maintaining relationships with various family members without significant difficulty
- taking her daughter to activities
- running errands
- shopping for groceries
- visits with relatives on weekends
- dining out once a week
- talking on the telephone with family and friends
- reading
- attending yard sales
- using a calculator to pay her bills

These activities do not provide substantial evidence to support the ALJ's credibility determination. The recited activities are not inconsistent with the plaintiff's testimony about the frequency and duration of her panic attacks. Nor do they support finding that the plaintiff can work in spite of her anxiety disorder. Even though the plaintiff reported almost all of these activities to Dr. Arnold, the Commissioner's consulting psychologist, she still opined that the plaintiff would be "moderately to severely impaired in the work place." [R 243]

■■■ Second, the ALJ found the plaintiff not credible because her treatment history for mental illness "is not indicative of an individual experiencing significant functional limitations." [R 16] The ALJ also found the plaintiff not credible because of her failure "to follow through with recommended mental health treatment."[2] Contrary to the ALJ's assertion, the medical records document a long treatment history for mental illness dating to well before her alleged onset date.[3]

The plaintiff was treated for anxiety by her family doctor, Dr. Wyatt, who referred her to Dr. Green, for psychiatric care. She reported to Dr. Green that she had developed psychiatric symptoms 25 years previously and had been hospitalized in a psychiatric unit and received electroshock treatments. By the time the plaintiff was referred to Dr. Green, she had been placed on psychotropic medication and reported a seven year history of generalized anxiety and also anxiety attacks. [R 145] Dr. Green treated the plaintiff from April 2000 until October 10, 2000. The plaintiff sought psychiatric care from Dr. Williams in December 2002, and was treated by Dr. Rogers from February 2003 until at least December 2003. During 2003, the plaintiff saw Dr. Rogers for individual therapy on nine occasions. Therefore, contrary to the ALJ's assertion, the plaintiff has a rather long history of seeking treatment for her mental illness.

In assessing the plaintiff's failure to follow through with recommended mental health treatment, the ALJ failed to consider the impact of the plaintiff's mental illness itself. Courts have long recognized the inherent unfairness of placing emphasis on a claimant's failure to seek psychiatric treatment:

---

**2.** The ALJ did not deny benefits due to a failure to follow prescribed treatment. Rather, he utilized that perceived failure to attack the plaintiff's credibility. Therefore, the question of whether the prescribed treatment would improve the plaintiff's condition sufficiently to allow work was not addressed.

**3.** The plaintiff's alleged date of onset of disability was amended at her ALJ hearing to October 1, 2002.

[I]t is common knowledge that depression is one of the most under reported illnesses in the country because those afflicted often do not recognize that their condition reflects a potentially serious mental illness. *See, e.g.,* Warren E. Leavy, "Hidden Depression," Chi. Trib., Feb. 1, 1996 at 7 (noting that nearly 17 million adult Americans suffer from depression in a given year and that two-thirds of them do not get treatment). Thus, the fact that claimant may be one of millions of people who did not seek treatment for a mental disorder until late in the day is not a substantial basis on which to conclude that Dr. Brown's assessment of claimant's condition is inaccurate. As the Sixth Circuit has noted in finding invalid an ALJ's reasons for rejecting claimant's assertions about his depression, '[a]ppellant may have failed to seek psychiatric treatment for his mental condition, but it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.' *Blankenship v. Bowen,* 874 F.2d 1116, 1124 (6th Cir.1989).

*Nguygen v. Chater,* 100 F.3d 1462, 1465 (9th Cir.1996). In the present case there is medical evidence demonstrating this unfairness. Dr. Williams noted that the plaintiff's insight was limited, noting that "fear causes her to make poor judgments such as stopping meds." [R 290] To find the plaintiff not credible because she exhibits precisely the sort of symptoms that her mental illness would be expected to cause is illogical and improper.[4]

■ The ALJ also improperly rejected the opinions of the plaintiff's treating psychologist, Dr. Rogers, and the Commissioner's consulting psychologist, Dr. Arnold. In *Wilder v. Chater,* 64 F.3d 355 (7th Cir.1995), the court was faced with an ALJ who had improperly ignored the opinions of a consulting psychiatrist who was appointed by the Commissioner. Although severe depression was the mental illness at issue in *Wilder,* the court's analysis is highly relevant: "Severe depression is not the blues. It is a mental illness; and *health professionals, in particular psychiatrists, not lawyers or judges, are the experts on it." Id.* at 337 (emphasis added) (citations omitted). In the present case, three medical professionals gave opinions that would either establish or strongly support the plaintiff's claim that she is disabled due to mental illness. The Commissioner's psychologist, Dr. Arnold, opined that the plaintiff "would likely be moderately to severely impaired in the work place." The state agency medical consultant restricted the plaintiff to limited contact with co-workers and the public. Dr. Rogers completed an RFC indicating "marked" impairments in several areas. Dr. Rogers' RFC opinions are especially important because the ALJ relied on his treatment notes about sporadic therapy and failure to follow recommended treatment to discredit the plaintiff. Dr. Rogers, not the ALJ, was the proper person to assess the vocational impact of the plaintiff's mental illness. Dr. Rogers was obviously aware of the plaintiff's treatment history and yet still deemed her to be disabled.[5] Dr. Rogers, who is a psychologist, was the proper expert to assess the plaintiff's symptoms and their impact on

---

4. Paradoxically, claimants who experience milder symptoms might be more likely to seek treatment because of a greater ability to exercise insight and judgment than those experiencing more severe symptoms.

5. Although the VE was not questioned about the impact of Dr. Rogers' RFC because it was completed after the ALJ hearing, it is certain that if that RFC were credited, the plaintiff would be found disabled based upon the "marked" restrictions indicated in three separate areas.

the plaintiff's residual functional capacity. Judge Johnson eloquently stated the proper role of an ALJ in his concurring opinion in *Marbury v. Sullivan,* as follows:

An ALJ sitting as a hearing officer abuses his discretion when he substitutes his own uninformed medical evaluations for those of claimant's treating physicians: "Absent a good showing of cause to the contrary, the opinions of treating physicians must be accorded substantial or considerable weight by the Secretary." *Lamb v. Bowen,* 847 F.2d 698, 703 (11th Cir.1988).... An ALJ may, of course, engage in whatever idle speculations regarding the legitimacy of the claims that come before him in his *private or personal capacity;* however, as a hearing officer he may not arbitrarily substitute his own hunch or intuition for the diagnosis of a medical professional.

957 F.2d 837, 840–41 (11th Cir.1992)(emphasis in original). This is especially true in the area of mental illness and its impact upon a claimant's ability to work. For the above reasons, substantial evidence does not support the ALJ's decision to reject the opinions of Dr. Rogers and Dr. Arnold.

## CONCLUSION

Substantial evidence does not support the ALJ's refusal to credit the plaintiff's testimony or Dr. Rogers' RFC. Therefore, both must be accepted as true and based upon the testimony of the VE, the plaintiff is disabled within the meaning of the Social Security Act. An appropriate order remanding the action with instructions that the plaintiff be awarded the benefits claimed will be entered contemporaneously herewith.

## *FINAL ORDER*

In conformity with and pursuant to the memorandum opinion entered contemporaneously herewith, it is

ORDERED, ADJUDGED and DECREED that the decision of the Commissioner of the Social Security Administration is hereby REVERSED, and the case is REMANDED to the Commissioner with instructions that the plaintiff be awarded the benefits claimed. It is

FURTHER ORDERED that the Commissioner withhold from payments that are determined to be due the plaintiff under this order an amount not to exceed 25 percent of the total amount of disability benefits to which the plaintiff is entitled, pursuant to the provisions of 42 U.S.C. § 406(b). The Commissioner is directed to advise the court of the amount withheld so that the matter may be set for final determination of the amount of attorney's fee to be allowed plaintiff's counsel for services rendered in representing plaintiff in this cause.

It is further ORDERED pursuant to Rule 54(d)(2)(B) of the Federal Rules of Civil Procedure, that plaintiff's attorney is hereby granted an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b) until thirty (30) days subsequent to the receipt of a notice of award of benefits from the Social Security Administration. *This order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act.*